# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DAVID MEYERS,** | ) |
| Plaintiff, | ) Case No. 7:18CV00029 |
| v. | ) **OPINION** |
| **U.S. POSTAL SERVICE, ET AL.,** | ) By: James P. Jones |
| Defendants. | ) United States District Judge |

*David Meyers, Pro Se Plaintiff; Richard C. Vorhis and Ann-Marie C. White, Office of the Attorney General, Richmond, Virginia, for Defendants.*

Only one claim remains before me now in this civil rights action under 42 U.S.C. § 1983 — plaintiff David Meyers' claim for injunctive relief, based on his contention that correctional officers Swiney and Stallard in the Protective Custody Unit ("PCU") at Red Onion State Prison ("Red Onion") were not protecting Meyers from two inmates. After review of Meyers' many pending motions seeking interlocutory injunctive relief and alleging new factual developments, I conclude that his claim is now moot and, accordingly, this action must be summarily dismissed.

I. BACKGROUND.

In July of 2018, I found that Meyers has three strikes under 28 U.S.C. § 1915(g) and could not proceed without prepayment of the filing fee unless he satisfied the imminent danger exception in § 1915(g). I also held that Meyers could

> "invoke the 'imminent danger' exception *only to seek relief from a danger* which is 'imminent' at the time the complaint is filed" or continuing into the present. In other words, the fact that an inmate is in imminent danger from one source does not open the case up to other, nonimminent danger claims or claims for monetary damages."

Op. & Order 5, July 23, 2018, (ECF No. 48) (internal citation omitted). Accordingly, I dismissed all of Meyers' claims for damages and his nonimminent danger claims for injunctive relief. *Id.* at 7-8.

I also held that only one of Meyers' claims for injunctive relief could proceed under § 1915(g) for further factual development, which was his contention that practices allowed by PCU officers Swiney and Stallard created opportunities for PCU inmates Thomas and Runren to carry out their repeated threats to rape or kill Meyers in his cell, given his inability to see or walk. *Id.* at 9-10. I found that these allegations stated a potential Eighth Amendment claim of deliberate indifference to Meyers' safety. *Id.* at 9 (citing *Makdessi v. Fields*, 789 F.3d 126, 132-34 (4th Cir. 2015) (holding that prison officials have duty to respond reasonably to alleviate excessive risks to inmate safety known to them). I then

referred this one matter to United State Magistrate Judge Pamela Meade Sargent, who conducted an evidentiary hearing and issued a Report and Recommendation ("Report"). There being no objections, I adopted the Report and its finding that Meyers was in imminent danger at the time he filed the Complaint in January of 2018.[1] That finding, however, was not a ruling in Meyers' favor on the merits of his claims for injunctive relief concerning Swiney and Stallard. That claim is before me now.

In January of 2018, the PCU was located in D1 Pod. Swiney was the Unit Manager of that pod, and Stallard also worked there as a floor officer. Swiney testified that Meyers had told him multiple times of threats Thomas and Runren had made to rape or kill him, and as a result, Swiney usually (but not always) assigned Meyers to a different tier than either of these inmates.

The evidence summarized in the Report confirmed that under PCU practices, circumstances had occurred when inmates Thomas and Runren could have entered Meyers' open cell to harm him. Meyers uses a wheelchair and is visually impaired. He and his witnesses testified that Thomas and Runren had threatened, repeatedly, to harm Meyers. PCU inmates are housed in separate cells, but top tier inmates have in-pod recreation together, unrestrained, as do bottom tier inmates at

---

[1] Based on this finding, I allowed Meyers to continue paying the filing fee for this action through installments under the § 1915(g) imminent danger exception and § 1915(b).

a separate time. During top tier inmates' in-pod recreation, when a nurse comes to the bottom tier to distribute medications, the bottom tier inmates' doors are opened for this purpose. While this distribution occurs, top tier inmates are to line up until the cell doors are closed again. The inmates are not restrained, however, and could enter into one of the open cells.

Judge Sargent's Report also found that on August 1, 2018, the PCU inmates were moved to C6 Pod. Neither Swiney nor Stallard have worked in C6 Pod. They have remained posted to D1 Pod. After the move to C6 Pod, PCU inmates continued to have in-pod recreation and pill call under the same system utilized in D1 Pod. Thus, at the time of the hearing, the potential risk persisted for Thomas and Runren to enter Meyers' cell and harm him.

Meyers has filed numerous motions with the court for various sorts of interlocutory relief, including to have the court review officers' alleged misconduct concerning his inmate trust account, to obtain a "keep separate" order, to prevent continued opening of his door during in-pod recreation, to maintain his protective custody status, and to prevent his transfer to a general population housing unit. He has also moved for summary judgment. The allegations in these motions and attached exhibits reflect recent developments in Meyers' housing and security classification. On September 4, 2018, Meyers was moved to "Special Housing RHU Status," after receiving a disciplinary charge. Mot. 5, ECF No. 82. Then, on

September 14, 2018, the Institutional Classification Authority ("ICA") conducted a review of Meyers' Security Level. The ICA recommended that Meyers "be changed from level 'P' to level 5." Mot. Ex. 1, ECF No. 89-1. As the rationale for this change, the ICA stated:

> Offender Meyers is currently listed as medical Code E and had previously been housed in Protective Custody and now refuses to leave segregation. Offender Meyers stated he had enemy's in the housing unit and offender was provided (8) Enemy Summary Forms. Once he completed the forms, an investigation was completed by the Institutional Investigator and there was no evidence to support his claims of any threats. While being housed at [Red Onion State Prison] he has received 8 charges including a 201B refusing to live in Protective Custody.

*Id.* The ICA also recommended that once Meyers was reclassified to Security Level 5 ("SL-5"), he should be transferred to Sussex I State Prison or Wallens Ridge State Prison ("Wallens Ridge"). An administrative officer reviewed and agreed with the ICA's assessment. *Id.* at 2. On September 25, 2018, the Central Classification Services ("CCS") representative approved changing Meyers to SL-5 and transferring him to Wallens Ridge. CCS commented: "Offender has continuously refused to enter protective custody coupled with disruptive behavior. SL-5 is appropriate." *Id.*

In a motion dated October 5, 2018, Meyers states that he is confined in "B4-Cell-10 Restricted Housing Unit Security Level 5." Mo. 3, ECF No. 94. He insists that the disciplinary charges he received in the PCU were minor and false, and

denies that he refused protective custody. Meyers also provides a list of additional PCU inmates at Red Onion who have threatened him. He asks the court to order the defendants to document that he should be kept separate from these inmates and to restore his protective custody status, with the caveat that he cannot be housed in the same PCU with them.

Meyers also states that he will be in danger of harm from other inmates if he is transferred to general population housing instead of a PCU. He warns that his documented status as a high risk sexual victim and a past victim of sexual assault place him in danger of suffering more sexual assaults if he is not returned to protective custody status. He also fears inmate retaliation for his past cooperation with law enforcement.

## II. DISCUSSION.

It is well established that

> [o]nce an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim. And the newly situated inmate has no further need for such declaratory or injunctive relief, for he is free of the policy or practice that provoked his lawsuit in the first place.

*Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007). After review of Meyers' claim and his recent allegations about his classification changes, I conclude that this civil action must be dismissed as moot.[2]

Meyers' allegations, even taken in the light most favorable to him, reflect that he is no longer in imminent danger because of the PCU practices of the defendants Swiney and Stallard. In fact, Swiney and Stallard have had no direct involvement with Meyers' PCU housing since August 1, 2018, when the PCU inmates moved to C6 Pod under the supervision of different officers. As Meyers is no longer subject to supervision by Swiney and Stallard or in any danger from their allegedly deficient practices regarding Runren and Thomas, his claims for injunctive relief against Swiney and Stallard are moot.

Furthermore, at the time of this writing, Meyers is no longer a PCU inmate. He is now classified as an SL-5 inmate. As such, he cannot be housed in the PCU at Red Onion, where Runren and Thomas are confined. Moreover, Swiney and Stallard have no authority to alter Meyers' security classification, even if so ordered by the court. It is evident that, absent renewed ICA classification

---

[2] I have previously dismissed all of Meyers' claims for monetary damages under § 1915(g). In any event, Meyers could not recover damages from Swiney and Stallard for their alleged failure to protect him from Runren and Thomas in the PCU, because Meyers never suffered any serious physical or emotional harm from these inmates. *See Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (holding that for viable § 1983 claim of failure to protect, a prisoner must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury").

proceedings recommending Meyers' return to Security Level P, which must then be reviewed and approved by the CCS, Meyers will not be housed with Runren or Thomas, or any of the other Red Onion PCU inmates who have allegedly threatened to harm him. Because Meyers' demand for injunctive relief for protection from the PCU inmates is thus moot, I will summarily dismiss this case and dismiss all motions pending therein as moot.³

A separate dismissal Order will be entered herewith.

DATED: November 15, 2018

/s/ James P. Jones
United States District Judge

---

³ Meyers' later pleadings in this case raise many other issues that could conceivably be construed as seeking to amend his claims here. The court's docket indicates, however, that Meyers has two pending cases before another judge of this court that raise these same issues, namely *Meyers v. Kiser*, No. 7:18CV00485, and *Meyers v. Counts*, No. 7:18CV00502. Accordingly, I decline to construe any of Meyers' submissions in this case as amendments.